Kramer v Greene (2016 NY Slip Op 05776)





Kramer v Greene


2016 NY Slip Op 05776


Decided on August 11, 2016


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on August 11, 2016

Tom, J.P., Sweeny, Andrias, Manzanet-Daniels, Webber, JJ.


653567/12 1135A 1135

[*1] Jay D. Kramer, Plaintiff-Appellant,
v
Arthur B. Greene, et al., Defendants-Respondents.


Barack Ferrazzano Kirschbaum & Nagelberg, LLP, Chicago, IL (Robert E. Shapiro of the bar of the State of Illinois, admitted pro hac vice, of counsel), for appellant.
Cohen Tauber Spievack & Wagner, P.C., New York (Sari E. Kolatch of counsel), for respondents.



Orders, Supreme Court, New York County (Shirley Werner Kornreich, J.), entered on or about December 12, 2014, which granted defendants' motion for summary judgment dismissing the complaint, and denied plaintiff's motion for summary judgment, unanimously modified, on the law, to deny defendant's motion, and otherwise affirmed, without costs.
Plaintiff, an attorney, assisted defendant Arthur B. Greene, an accountant and financial manager, in various matters that Greene handled as a literary agent for Stephen King. While plaintiff was initially compensated on an hourly basis, in or about 1988, Greene began paying him a percentage of the commissions that he received from King on completed deals, with the percentage increasing over time to compensate plaintiff for work he was doing on projects that were not generating any revenue.
On March 30, 2012, plaintiff was terminated after King stated that he did not want him working on his business. At first, defendants continued to pay plaintiff a share of Greene's commissions on completed work, but they soon stopped paying him. As a result, plaintiff commenced this action in which, in the now remaining causes of action, he seeks to recover, under theories breach of an oral contract, or alternatively, quantum meruit or unjust enrichment, a share of Greene's commissions on revenue- generating projects on which plaintiff completed his work before he was terminated. Defendants contend that once plaintiff stopped providing services for Greene, he was not entitled to any further compensation, even on completed deals that were still generating commissions.
An oral agreement may be enforceable as long as the terms are clear and definite and the conduct of the parties evinces mutual assent "sufficiently definite to assure that the parties are truly in agreement with respect to all material terms" (Matter of Express Indus. & Term. Corp. v New York State Dept. of Transp., 93 NY2d 584, 589 [1999]; Carlsen v Rockefeller Ctr. N., Inc., 74 AD3d 608 [1st Dept 2010]). However, not all terms of a contract need be fixed with absolute certainty, and courts will not apply the doctrine of indefiniteness to "defeat the reasonable expectations of the parties in entering into the contract" (Cobble Hill Nursing Home v Henry & Warren Corp., 74 NY2d 475, 483 [1989], cert denied 498 US 816 [1990]). Where "there may exist an objective method for supplying the missing terms needed to calculate the alleged compensation owed plaintiff," a claimed oral agreement is "not as a matter of law unenforceable for indefiniteness" (Basu v Alphabet Mgt. LLC, 127 AD3d 450, 450 [1st Dept 2015]; Abrams Realty Corp. v Elo, 279 AD2d 261 [1st Dept 2001], lv denied 96 NY2d 715 [2001]).
Defendants argue that the motion court correctly dismissed the breach of contract claim because plaintiff did not establish that there was a meeting of the minds between himself and Greene that commission payments would continue even after he was no longer providing any services for defendants. However, although the party seeking to enforce the contract bears the [*2]burden at trial to establish that a binding agreement was made and to prove its terms (see Sardis v Frankel, 113 AD3d 135, 144 [1st Dept 2014]), each party bears the burden of demonstrating that its motion for summary judgment should be granted due to the absence of any genuine issue of material fact (see Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985]). It is not until that burden is met that the burden shifts to the opposing party to demonstrate the existence of a triable issue of fact (see Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]). Furthermore, where questions of fact and credibility exist with respect to the existence of a binding oral agreement, and the terms thereof, summary judgment in favor of either side is inappropriate (see Sabre Intl. Sec., Ltd. v Vulcan Capital Mgt., Inc., 95 AD3d 434, 436 [1st Dept 2012]).
Here, defendants did not present evidence establishing the terms of Greene's commission agreement with plaintiff. Rather, they relied primarily on plaintiff's deposition testimony, which allegedly demonstrated that he and Greene never discussed, let alone came to any formal agreement on, whether the payment of commissions related to successful projects on which plaintiff had already completed his work would continue after his employment with defendants had ended.
At his deposition, when asked if there was any agreement between himself and Greene under which "[he] would receive a percentage of commissions . . . regardless of whether or not [he] [was] . . . continuing to do any work for Arthur Greene," plaintiff responded, "We both understood what a commission is. We were both experienced in the industry and we understood that a commission was payable from a percentage of a client's earnings for so long as the client was receiving income from deals that we worked on on a contingent basis." Plaintiff also testified, "[I]t was my complete expectation that in accordance with the industry custom I would be paid my commissions[,] and we had these conversations repeatedly."
While plaintiff acknowledged that Greene never expressly stated that this was his understanding or that plaintiff would continue to be paid commissions if he no longer worked on King matters, defendant presented no competent proof of Greene's understanding. Plaintiff negotiated his agreement with Greene alone, and Greene was not deposed and did not submit an affidavit in support of defendants' position that plaintiff's entitlement to a share of commissions ended when his employment was terminated, even on completed projects that were still generating revenue.
Plaintiff also submitted an affidavit in which he claimed that he and Greene "agreed orally" that his compensation "would comprise a percentage share of the commissions [] Greene received from King on the projects [he] worked on," and "[t]hus," Greene agreed that "whenever [he] received money on projects [plaintiff] worked on, a percentage would be paid to [plaintiff]." Contrary to defendants' contention, there was never any "admission" by plaintiff that the contract required that he be doing new work in order to receive payment on work he had already done. Furthermore, plaintiff asserted that during his 24-year relationship with Greene, there were numerous occasions when he received his share of commissions on completed work even though he was not doing any new work for King through Greene. Defendants also continued to pay plaintiff commissions on completed work for a short time after he was terminated.
That the family of an accountant that Greene used did not challenge Greene's refusal to pay his estate commissions on completed work after he died does not establish the terms of plaintiff's agreement with Greene. Nor does Mrs. Greene's uncorroborated explanation for Greene's willingness to increase plaintiff's commission rate establish as a matter of law that commissions were to cease when plaintiff's employment terminated.
Thus, summary judgment dismissing the breach of contract claim is inappropriate.
The cause of action for unjust enrichment or quantum meruit also should not be dismissed. Generally, quasi-contractual remedies are unavailable where there exists a valid and enforceable agreement governing the particular subject matter (see MG W. 100 LLC v St. Michael's Prot. Episcopal Church, 127 AD3d 624, 626 [1st Dept 2015]). However, "where there is a bona fide dispute as to the existence of a contract or the application of a contract in the dispute in issue, a plaintiff may proceed upon a theory of quasi contract as well as breach of contract, and will not be required to elect his or her remedies" (Goldman v Simon Prop. Group, Inc., 58 AD3d 208, 220 [2d Dept 2008]). Here, defendants argue that there was no binding [*3]contract because there was no meeting of the minds. Accordingly, plaintiff did not have to elect his remedies (see e.g. Sabre Intl. Sec., 95 AD3d at 439; Henry Loheac, P.C. v Children's Corner Learning Ctr., 51 AD3d 476 [1st Dept 2008]).
To establish unjust enrichment, a plaintiff must show "that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit [the other party] to retain what is sought to be recovered" (Mandarin Trading Ltd. v Wildenstein, 16 NY3d 173, 182 [2011] [internal quotation marks omitted]). To establish a claim for quantum meruit, the plaintiff must demonstrate: "(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services" (Caribbean Direct, Inc. v Dubset LLC, 100 AD3d 510, 511 [1st Dept 2012][internal quotation marks omitted]).
The motion court found that defendants were not unjustly enriched because plaintiff was well compensated for his work over the years, and his compensation kept growing as a percentage of the amount Greene was paid. The court dismissed the quantum meruit claim upon the finding that plaintiff was paid through April 2012. However, material issues of fact exist with respect to whether plaintiff is entitled to some further compensation for the work he completed before his termination and for which he did not receive a share of the commission or any direct compensation at all (see Balestriere PLLC v Banxcorp, 96 AD3d 497, 498 [1st Dept 2012]). Material issues of fact also exist as to whether defendants were enriched by plaintiff's work, and whether it would be unfair for defendants to retain that benefit without payment to plaintiff (see John Anthony Rubino & Co., CPA., P.C. v Swartz, 84 AD3d 599 [1st Dept 2011]).
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: AUGUST 11, 2016
CLERK